**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANA ELIZABETH HOLLINGER, | ) | CASE NO. 1:25-CV-01133-CEH |
| Plaintiff, | ) | |
| v. | ) | JUDGE CARMEN E. HENDERSON<br>UNITED STATES MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant, | ) | |

**I. Introduction**

Dana Elizabeth Hollinger ("Hollinger" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (ECF No. 7). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

On June 7, 2023, Hollinger filed an application for SSI, alleging a disability onset date of May 15, 2020. (ECF No. 8, PageID #: 45). The application was denied initially and upon reconsideration, and Hollinger requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On March 5, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 62-83). On May 15, 2024 the ALJ issued a written decision finding Hollinger was not disabled. (*Id.* at PageID #: 45-57). The

ALJ's decision became final on April 7, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 29-31).

On June 2, 2025, Hollinger filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 12, 13). Hollinger asserts the following assignments of error:

> (1) The ALJ erred when she failed to properly apply the criteria of Social Security Ruling 96-8p and consider all Plaintiff's impairments and related limitations when forming the residual functional capacity evaluation.
>
> (2) The ALJ erred at Step Three of the Sequential Evaluation when she failed to comply with the relevant Social Security Ruling, 19-2p, and find that Plaintiff's obesity equaled a listing.
>
> (3) The ALJ committed harmful error when she failed to properly apply the criteria of Social Security Ruling 16-3p and failed to find that the intensity, persistence and limiting effects of Plaintiff's symptoms, including pain, precluded her from engaging in substantial gainful activity on a full-time and sustained basis.

(ECF No. 10 at 1).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Hollinger's hearing:

> The claimant alleges she is disabled from work due to low back/pelvic pain, anxiety and depression. She testified she has difficulty sitting due to back pain that travels down her right leg. She has had some physical therapy but no injections. She stated she is able to lift 15 pounds for a short period of time, sit for 45 minutes, stand for 2-3 minutes, and walk for 2-3 minutes. She said she uses a cane that was not prescribed by a doctor. She stated she drops things periodically. She is able to reach in front and overhead. She testified she is able to go up and down stairs but it is painful. She said she is unable to crawl.
>
> The claimant testified to medication side effects including weight

> gain, thirst, fatigue, dizziness, and nausea.
>
> The claimant testified to depression, stating some days she is unable to get out of bed, does not shower, and has fluctuating appetite. She stated she lost her job at Home Depot due to being late, moving slowly, anxiety, and depression. She attends mental health counseling every other week. She testified to difficulty socializing and being in public, stating she feels very anxious and awkward. She stated she has difficulty remembering things. She uses a phone to keep track of medications and appointments. She watches television, reads, and is able to follow plot of movie. She stated she would need extra breaks due to pain and anxiety.

(ECF No. 8, PageID #: 51).

**B. Relevant Medical Evidence**

The ALJ also summarized Hollinger's health records and symptoms:

> The claimant attended physical therapy in November 2021 for chronic right sided low back pain with sciatica, myofascial pain and weakness. She was noted to have poor gait but good lumbar range of motion (C1F/10).
>
> In January 2023, claimant reported average back pain a 4/10, and can jump to 7-8/10 with activity. She reported caring for a neighbor with dementia for her day job. A 2019 lumbar x-ray report was noted as showing "L4 is at the iliac crest level and the last intervertebral disc space is L5/S1. There is no spondylolisthesis. Vertebral body heights are maintained. Intervertebral disc space heights are relatively well-maintained. Pedicles appear intact. There is no evidence of acute osseous abnormality. Posterior elements appear within normal limits" (C1F/5-7).
>
> In March 2023, claimant reported marijuana helped with pain and anxiety. On exam, she had normal gait and station, 5/5 grip strength, no lower extremity edema (C2F/32-35). Treatment notes from June 2023 indicate normal gait and station. Claimant prescribed Flexeril, Meloxicam and gabapentin (C3F/28, 29). In July 2023, she was again noted as having normal gait and station and no lower extremity edema (C3F/14, 15). Treatment notes from October 2023 indicate she had antalgic gait and was using a cane. She had some tenderness over the bilateral lumbar paraspinal muscles and painful lumbar extension. However, she had 5/5 motor strength and tone and intact sensation (C5F/21).

Notes from a November 2023 obesity medicine consultation indicates claimant's quality of life was moderately compromised by her weight (C5F/10).

Claimant began physical therapy in November 2023 for myofascial pain in the lumbar spine and legs. Antalgic gait but negative straight leg raise test, normal lumbar range of motion (C5F/13-15).

January 2024 pain management initial evaluation for right-sided low back pain and right hip pain. 5/5 strength in the lower extremities, intact sensation, normal deep tendon reflexes (C7F/34-38).

The claimant has treated at Circle Health Services East for individual counseling and medication management (C2F, C3F). Diagnoses indicated as generalized anxiety disorder and bipolar disorder. Claimant has been prescribed lamotrigine, buspirone, doxepin, Vistaril and Latuda (C2F-C4F, C8F). Treatment notes from January 2022 indicate claimant was experiencing stress and depression related to her financial situation and the anniversary of her pets' and mother's death. She reported her SSI application was denied, and she had been distraught not knowing how she would support herself. She appeared neutral or euthymic and did not express current suicidal ideation (C2F/170).

Therapy notes and medication management notes consistently indicate claimant presented in pleasant mood. She consistently noted ongoing stressors regarding finances, paying rent, caring for her neighbor (C2F/11, 21, 24, 71, 79, 81, 134, 151). Claimant reported her strengths as writing, good listener, leadership skills, and friends (C2F/122). In July 2022, claimant reported her mood as "up and down, but it's just situational stress." She denied mood swings or agitation. She stated her motivation was improving and was starting to have an interest in cleaning her home. She reported she was still having some fatigue related to her caregiving job from 8am-2pm (C2F/116). Notes from February 2023 indicate a diagnosis of posttraumatic stress disorder (C2F/51).

At her June 2023 therapy visit, claimant presented in a pleasant, calm mood. She reported feeling drained and overwhelmed as she was still caring for her elderly neighbor (C3F/33). In July 2023, claimant continued to make progress at home in cleaning and decluttering, stating the achievements had improved her mood. She appeared neutral or euthymic (C3F/9).

> In July 2023, she denied irritability, mood swings, agitation, intrusive thoughts, and suicidal plant[sic]/intent. She was cooperative, engaged, and fully oriented with no abnormal thought content, moderate insight and no impairment in judgment (C3F/20-22). In September 2023, she reported she was "a little bit better. Busy and stressful." She indicated she was burned out due to caregiver stress (C6F/35). October 2023, claimant reported feeling very tired due to moving. She expressed improved mood due to the cleaning and packing (C6F/26). In December 2023, she reported she was doing well on medication. She presented in pleasant mood (C6F/13).
>
> In February 2024, the claimant reported smoking more cannabis to cope with stress related to her upcoming inspection. On exam she was cooperative, engaged and fully oriented. She was anxious but denied suicidal ideation (C8F/2-4).

(ECF No. 8, PageID #: 52-53).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 1. The claimant has not engaged in substantial gainful activity since June 7, 2023, the application date (20 CFR 416.971 et seq.).
>
> 2. The claimant has the following severe impairments: somatic dysfunction of lumbar and sacral regions; obesity; bipolar disorder; generalized anxiety disorder; posttraumatic stress disorder (PTSD) (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can never be exposed to unprotected heights, hazardous machinery and commercial driving. The claimant is limited to simple, routine tasks, involving only simple short instructions, simple decisions, occasional

> workplace changes and no strict production rate or hourly quotas. The claimant is limited to occasional interaction with coworkers, supervisors and the public.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> …
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since June 7, 2023, the date the application was filed (20 CFR 416.920(g)).

(ECF No. 8, PageID #: 48, 50, 55-56).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535,

538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 416.920(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 416.912(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Hollinger raises three issues on appeal: (1) whether the ALJ properly considered all her impairments as required under Social Security Ruling ("SSR") 96-8p; (2) whether the ALJ erred

at step three when she failed to find that Plaintiff's obesity equaled a listing; and (3) whether the ALJ complied with SSR 16-3p in considering Plaintiff's symptoms. (ECF No. 10 at 1).

**1. Consideration of All Impairments**

In her first argument, Hollinger argues the ALJ failed to consider all of her impairments, specifically challenging the ALJ's consideration of Plaintiff's migraine headaches. (ECF No. 10 at 8). Hollinger asserts that her migraines were equal to Listing 11.02B such that she should have been found to be disabled at step three of the sequential evaluation. (*Id.* at 8-10). Additionally, Hollinger argues the ALJ "failed to discuss any effect the headaches would have on Plaintiff's ability to engage in substantial gainful activity on a full-time and sustained basis." (*Id.* at 10). Plaintiff also provides a general overview of the medical evidence and asserts that the ALJ "failed to include any limitations related to Plaintiff's complaints regarding her physical or psychological limitations." (*Id.* at 11).

The Commissioner responds that Plaintiff's argument should be rejected because the ALJ recognized the requirement that she consider all of Plaintiff's impairments, including those that were not severe, and "the ALJ explained that Plaintiff had a history of migraine headaches" but "the record showed no ongoing significant symptoms or limitations related to the condition." (ECF No. 12 at 7). The Commissioner argues that the ALJ's discussion, though brief, satisfied the standard previously set forth in this District. (*Id.*). Further, the Commissioner argues that even if this statement was insufficient, the ALJ's decision is still supported by substantial evidence because Plaintiff failed to provide evidence supporting limitations from her migraines. (*Id.* at 8). As to Listing 11.02B, the Commissioner argues Plaintiff failed to present any listing argument to the ALJ such that the ALJ was not required to discuss the listing. (*Id.* at 9). Regardless, the Commissioner argues that Plaintiff failed to cite medical evidence showing that

she equaled the listing. (*Id.* at 10-11).

Plaintiff replies that despite the Commissioner's assertion that the ALJ considered her migraines, the Commissioner "failed to provide any evidence which established this inclusion by the ALJ in the RFC." (ECF No. 13 at 1). Plaintiff asserts the "record contained evidence of [her] continuing migraine headaches and the need to maintain medical compliance and resting on a daily basis" but the ALJ ignored this evidence such that remand is required. (*Id.*).

Plaintiff's argument challenges the ALJ's consideration of her migraines at steps two through four of the sequential evaluation. At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). The Sixth Circuit "construes step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citation omitted). When an ALJ determines that one or more of a claimant's impairments are severe, the ALJ must proceed to consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Id.* (citation modified). Typically, "any perceived failure to find additional severe impairments at step two [does] not constitute reversible error" as long as the ALJ considered all of the claimant's impairments in the remaining steps. *Id.* (citation modified).

At step three, an ALJ must consider whether a claimant's medical impairments meet or equal one of the listed impairments. 20 C.F.R. § 416.920(a)(4)(iii). To meet a listing, the claimant "must satisfy all of the [listing's] criteria." *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. Aug. 10, 2020). The claimant "bears the burden of showing that an impairment meets or equals a listed impairment." *Id.* If the ALJ's listing finding is

supported by substantial evidence, based on the record as a whole, the Court will defer to the ALJ's finding, "[e]ven if the record could support an opposite conclusion." *Id.* at *4. Moreover, if the ALJ's listing finding is not supported by substantial evidence, the error is harmless if the claimant cannot show that his impairments met or medically equaled a listing. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014).

If a claimant's impairments do not meet or equal a listing, an ALJ must determine the claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). In doing so, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5. "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon when he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Here, the Court agrees with the Commissioner that the ALJ did not err in considering Plaintiff's migraines. At step two, the ALJ found Plaintiff's migraine headaches were not a severe impairment because the record did not note "ongoing significant symptoms or limitations" related to her migraines. (ECF No. 8, PageID #: 48). To try and rebut this conclusion, Plaintiff points largely to notes from her counseling sessions with a social worker that indicate she will

"maintain medication compliance and obtain[] rest daily" to reduce migraines. (*Id.* at PageID #: 883, 891, 897, 905, 1555, 1563, 1565, 1570, 1572, 1669, 1710). However, these notes do not provide any information contrary to the ALJ's conclusion that she did not have *significant* ongoing symptoms or limitations. Nor does Plaintiff's reliance on a prescribed medication for migraines that she was to take *as needed*, notes of a history of migraines, or her prior testimony that she experienced frequent migraines establish any ongoing significant symptoms or limitations. (*Id.* at PageID #: 98, 520, 887, 1518, 1619). Further, even if the ALJ erred at step two, any error is harmless because the ALJ concluded Plaintiff had at least one severe impairment and proceeded through the sequential evaluation. *Kestel*, 756 F. App'x at 597.

Turning to step three, the Court again agrees with the Commissioner and finds no error in the ALJ's analysis. Importantly, because the ALJ reasonably concluded that Plaintiff's migraines were not a severe impairment, he did not err in failing to consider whether Claimant's migraines equaled a listing. *See Robinson v. Comm'r of Soc. Sec.*, No. 13-CV-11637, 2014 WL 3528434, at *13 (E.D. Mich. July 16, 2014) ("[B]ecause the ALJ found that plaintiff's HIV and depression were not severe impairments at Step Two, she was not required to perform a Step Three analysis of those impairments.") (collecting cases).

Further, even if the ALJ did err, such error is harmless because Plaintiff has not carried her burden of showing that her migraines equaled Listing 11.02B. While Listing 11.02B addresses epilepsy, SSR 19-4p explains that this listing "is the most closely analogous listed impairment for an MDI of a primary headache disorder." SSR 19-4p, 2019 WL 4169635, at *7. SSR 19-4p further explains:

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: A detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory

> symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id.* The records Plaintiff cites fail to include the required description of her migraines, side effects of treatment, and, perhaps most critically, any limitations associated with her migraines. Thus, Plaintiff has failed to establish that she equaled Listing 11.02B. *See Snyder v. Comm'r of Soc. Sec.*, No. 22-5948, 2023 WL 3673265, at *4 (6th Cir. May 26, 2023).

Finally, Plaintiff's argument that the ALJ failed to consider her migraines at step four also fails. The Sixth Circuit has previously held that an "ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [the claimant's] nonsevere impairments at step two of her analysis" support that the ALJ complied with the requirement that she consider all impairments in crafting the RFC. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 852 (6th Cir. 2020). Here, in setting forth the relevant law, the ALJ recognized the requirement that she "consider all of the claimant's impairments, including impairments that are not severe" and cited SSR 96-8p. (ECF No. 8, PageID #: 47). As discussed above, the ALJ concluded at step two that Plaintiff did not have any significant limitations from her migraines such that they were not a severe impairment but indicated that she "considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (*Id.* at PageID #: 48). The ALJ was not required to provide any further discussion or explanation regarding her consideration of Plaintiff's headaches, especially

given Plaintiff's failure to cite any evidence supporting additional limitations that should have been considered.

**2. Consideration of Plaintiff's Obesity**

Hollinger next argues that the ALJ failed to comply with SSR 19-2p in considering her obesity and asserts the ALJ should have determined that her obesity met or equaled a listing. (ECF No. 10 at 14). Plaintiff argues the "evidence supported the fact that the effects of Plaintiff's obesity precluded her from engaging in substantial gainful activity on a full-time and sustained basis" but "the ALJ failed to properly consider the effect of Plaintiff's documented obesity which resulted in the RFC not being supported by substantial evidence." (*Id.* at 16). Additionally, she asserts "the ALJ erred when she failed to consider whether the combination of Plaintiff's obesity in conjunction with her other severe impairments precluded her from engaging in substantial gainful activity on a full-time and sustained basis." (*Id.* at 17).

The Commissioner responds that "the ALJ considered Plaintiff's obesity when assessing the RFC and reasonably concluded that she could perform a limited range of light work." (ECF No. 12 at 11). The Commissioner highlights the ALJ's discussion of Plaintiff's obesity and asserts the "ALJ found Plaintiff's obesity severe; limited her to a reduced range of light work and the RFC was more restrictive than the physical [prior administrative medical findings] finding no severe physical impairment, despite both physicians considering treatment records nothing that Plaintiff was obese." (*Id.* at 12). The Commissioner argues the ALJ also explicitly stated that she considered the combination of all impairments. (*Id.* at 13).

Plaintiff replies that "[t]he issue is not whether the RFC was more restrictive than the state agency who found no severe physical impairments, rather the issue is whether the ALJ's conclusions were supported by substantial evidence." (ECF No. 13 at 2). She argues that the

ALJ failed to consider the totality of the limitations associated with Plaintiff's obesity" such that the ALJ failed to support her RFC with substantial evidence. (*Id.*).

Plaintiff's challenge to the ALJ's consideration of her obesity is meritless. The ALJ concluded Plaintiff's obesity was a severe impairment but found that even under the guidance of SSR 19-2p, Plaintiff's impairments or combination of impairments did not equal a listing. (ECF No. 8, PageID #: 48-49). In discussing the medical evidence, the ALJ noted records indicating Plaintiff's "quality of life was moderately compromised by her weight." (*Id.* at PageID #: 52). The ALJ explained that "[t]he objective evidence indicates the claimant experiences some limitation, but not to such a degree that she is prevented from performing work at the light level of exertional level with limitations that take into account her back pain." (*Id.* at PageID #: 53). The ALJ specifically indicated that she "also considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity pursuant to SSR 19-2p." (*Id.* at PageID #: 53-54). Thus, the ALJ clearly considered Plaintiff' obesity in formulating the RFC. Plaintiff fails to "explain *what* more the ALJ was required to do or *how* [her] cited objective evidence indicates any more limitations that [her] obesity imposed" or "point to any medical opinions that establish that [her] obesity imposed greater limitations than those encompassed in [her] RFC determination." *Jurcago v. Comm'r of Soc. Sec.*, No. 5:23-CV-01187-JG, 2024 WL 2786694, at *10 (N.D. Ohio May 2, 2024), *report & recommendation adopted*, 2024 WL 2784334 (N.D. Ohio May 30, 2024). Accordingly, her argument fails.

**3. Plaintiff's Symptoms**

Finally, Plaintiff argues the ALJ committed harmful error when she failed to properly apply the criteria of SSR 16-3p in analyzing Plaintiff's symptom testimony. (ECF No. 19 at 17). Plaintiff asserts that "the ALJ erroneously opined that although the Plaintiff had some

limitations, it was not to such a degree that she was prevented from performing work at the light level of exertion" but "the ALJ failed to support her decision with substantial evidence" or account for Plaintiff's continuing pain. (*Id.* at 20-21).

The Commissioner responds that the ALJ "gave more than an adequate explanation of her consideration of Plaintiff's subjective complaints, so her findings must stand." (ECF No. 12 at 14). The Commissioner argues the ALJ considered the complaints of pain "but noted that the physical examinations did not demonstrate significantly limited range of motion, motor weakness, neurological deficits, or sensation loss that were associated with intense and disabling pain." (*Id.* at 15). Further, the Commissioner points to the ALJ's consideration of Plaintiff's daily activities and the opinion evidence in finding that Plaintiff's allegations did not support greater limitations. (*Id.* at 15-16).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304.

Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze

all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, after summarizing the medical records, the ALJ provided the following explanation of her consideration of Plaintiff's symptom testimony:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> Inconsistencies between the claimant's statements and the rest of the medical evidence cause the undersigned to determine that the individual's alleged symptoms are less likely to reduce the claimant's capacity to perform work-related activities. The undersigned has also considered the consistency of the claimant's testimony concerning symptoms with statements in the record made prior to the hearing. Evaluation of the claimant's symptoms in comparison to the claimant's prior statements and the medical records as a whole is described below with specific examples supporting the undersigned's decision that the claimant's symptoms are less likely to reduce the claimant's capacity to perform work-related activities (See SSR 16-3p).

> First, the objective evidence of record is inconsistent with the claimant's allegations in this case, as set forth above. The record does not demonstrate the significantly limited range of motion, motor weakness, neurological deficits, or sensation loss that are associated with intense and disabling pain (C1F, C3F, C5F, C7F). The record also does not contain the level of abnormal psychiatric signs of behavior, affect, thought, memory, orientation, and contact with reality that are normally associated with intense and disabling psychiatric symptoms (C2F-C4F, C6F, C8F).
>
> The objective evidence indicates the claimant experiences some limitation, but not to such a degree that she is prevented from performing work at the light exertional level with limitations that take into account her back pain. The undersigned also considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity pursuant to SSR 19-2p.

(ECF No. 8, PageID #: 53-54).

This discussion shows that the ALJ properly considered Plaintiff's symptom allegations in accordance with SSR 16-3p. The ALJ found that the objective medical evidence did not support the severity of Plaintiff's allegations given the lack of objective evidence showing limited range of motion, motor weakness, neurological deficits, sensation loss, or abnormal psychiatric signs. (*See id.* at PageID #: 334 (poor gait but good lumbar range of motion); 498 (denying changes in behavior, irritability, mood swings, agitation, and intrusive thoughts); 508-09 (reporting "hanging in there" and well controlled anxiety); 522 (normal gait, station, grip strength); 603 (citing "situational stress" as cause of her moods); 638 (pleasant mood despite ongoing stressors); 887 (normal gait and station); 901 (normal gait and station); 1524 (antalgic gait but negative straight leg test); 1530 (antalgic gait but normal motor strength and tone)). Additionally, throughout the decision, the ALJ discussed Plaintiff's ability to care for her elderly neighbor and perform activities of daily living. (*Id.* at PageID #: 49-53). The ALJ also relied on the State agency consultants' opinions, which concluded Plaintiff had only moderate limitations

in the areas of mental functioning and retained the ability to complete simple, routine tasks but not a production rate pace with only occasional routine workplace changes and frequent interactions with supervisors, coworkers, and the public. (*Id.*at PageID #: 54, 121-24, 130-33). Thus, substantial evidence supports the ALJ's conclusion, and the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

**VI. Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: January 12, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE